J-S26033-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA    :    IN THE SUPERIOR COURT OF
                                        :          PENNSYLVANIA
                                        :
              v.                       :
                                        :
                                        :
TAMMY SHERRI FIGUEROA             :
                                        :
            Appellant           :      No. 66 MDA 2021

Appeal from the Judgment of Sentence Entered December 7, 2020
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0002223-2020

BEFORE:  STABILE, J., MURRAY, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:       **FILED: NOVEMBER 5, 2021**

Tammy Sherri Figueroa ("Figueroa") appeals from the judgment of sentence imposed following her convictions of one count each of driving under the influence of alcohol or controlled substance – general impairment ("DUI") and obedience to traffic control devices.[1]  We affirm.

On March 12, 2020, at approximately 1:40 a.m., York City Police Officer Daniel Kling ("Officer Kling") and Sergeant Matthew Irvin ("Sergeant Irvin") (collectively, the "Officers") were on routine patrol, in full uniform, in a marked police cruiser.  The Officers observed a 2006 silver Chrysler driving erratically in the area of Princess Street and Belvidere Avenue.  The Officers were able to run the vehicle's license plate, which confirmed that Figueroa was the owner

---

[1] 75 Pa.C.S.A. §§ 3802(a)(1), 3111(a).

of the Chrysler. However, the Officers continued patrolling without stopping the vehicle.

At approximately 1:45 a.m., the Officers observed the same 2006 Chrysler traveling down Hawthorne Street. The Officers increased their speed to follow the vehicle, locating it again near King Street. The vehicle traveled east on King Street before turning onto the 500 block of West King Street. The Officers observed the vehicle pull into a parking spot on the north side of the roadway. The Officers pulled over as well and continued to observe the vehicle.

After a few minutes, the vehicle pulled back out onto West King Street, without using a turn signal, and proceeded towards the intersection of West King Street and South Hartley Street. Both West King Street and South Hartley Street are one-way roads. At the intersection, the Officers observed the vehicle turn left onto South Hartley Street on a steady-red signal, despite displayed signs stating no turn on red. The Officers followed the vehicle as it traveled through the intersection of Market Street and South Hartley Street. At this point, the Officers activated their lights and sirens and initiated a traffic stop. The vehicle made a sudden stop and pulled over to the right side of the road.

Officer Kling approached the driver's side of the vehicle and informed the driver, later identified as Figueroa, the reason for the vehicle stop, and

Figueroa agreed that she had illegally turned left during a steady red light.[2]
During their conversation, Officer Kling observed an odor of alcohol coming
from the inside of the vehicle; Figueroa was the sole occupant of the vehicle;
and Figueroa was slurring her words and purposefully avoiding looking at
Officer Kling. Officer Kling asked Figueroa to look at him, when she did Officer
Kling observed that Figueroa had bloodshot, glassy eyes.

Officer Kling returned to the marked cruiser and informed Sergeant Irvin
of his observations. At that time, Sergeant Irvin conducted Field Sobriety
Tests ("FSTs") on Figueroa. Officer Kling stood nearby and utilized his body
camera to record the FSTs. After observing Figueroa perform the FSTs,
Sergeant Irvin concluded that Figueroa was impaired and unable to safely
operate her vehicle.[3] Subsequently, on March 12, 2020, Figueroa was
arrested and charged with the above-mentioned offenses.

_____

[2] Officer Kling's body camera was active and recording for the entirety of the
stop. The body camera footage was preserved for trial and, ultimately,
admitted as Commonwealth's Exhibit 1. **See** N.T. (Non-Jury Trial), 10/30/20,
at 27-28 (wherein Officer Kling's body camera footage was admitted into
evidence as Commonwealth's Exhibit 1).

[3] The Officers transported Figueroa to an unnamed hospital and read Figueroa
a Pennsylvania Department of Transportation DL-26 form, which does not
appear in the record before this Court. Nevertheless, all parties agreed and
testified that Figueroa was read a DL-26 form and verbally consented to a
blood draw, but that the phlebotomist was unable to locate a vein and,
ultimately, the blood draw was unsuccessful. **See** Trial Court Opinion,
3/12/21, at 7-8; **see also** N.T. (Non-Jury Trial), 10/30/20, at 19, 27, 57, 60-
61 (wherein Officer Kling, Sergeant Irvin, and Figueroa each testified that
Figueroa was read a DL-26 form at the hospital; she consented to a blood
draw; and the blood draw was unsuccessful).

On October 30, 2020, after a non-jury trial, Figueroa was convicted of the above-mentioned offenses. The trial court deferred sentencing and ordered the preparation of a pre-sentence investigation report. On December 7, 2020, Figueroa proceeded to a sentencing hearing. For her conviction of DUI, the trial court sentenced Figueroa to six months of restrictive probation, with the first thirty days to be served on house arrest, a fine of $300.00, plus the costs of prosecution. For her conviction of obedience to traffic control devices, the trial court sentenced Figueroa to pay a fine of $150.00, plus the costs of prosecution.

On December 16, 2020, Figueroa filed a post-sentence Motion, in which she argued that the Commonwealth had presented insufficient evidence that Figueroa was incapable of driving safely, and that the verdict was against the weight of the evidence. On December 18, 2020, the trial court denied Figueroa's post-sentence Motion. Figueroa filed a timely Notice of Appeal[4] and a court-ordered Pa.R.A.P. 1925(b) Concise Statement of errors complained of

---

[4] Figueroa purports to appeal from the October 30, 2020, verdict of guilt. However, in criminal matters, an appeal properly lies from the imposition of the judgment of sentence. *See Commonwealth v. Shamberger*, 788 A.2d 408, 410 n.2 (Pa. Super. 2001) (*en banc*) (citation omitted).

on appeal.[5]

Figueroa now raises the following claims for our review:

1. **Sufficiency of Evidence.** Figueroa was found guilty of DUI …. To sustain a conviction for this subsection, the Commonwealth must establish that the driver was under the influence of [] alcohol such that she was substantially impaired in the safe operation of a motor vehicle. Here, there was no evidence presented that Figueroa was substantially impaired. Did the Commonwealth fail to present sufficient evidence to find Figueroa guilty?

2. **Weight of the Evidence.** Figueroa was found guilty of DUI …. Figueroa's performance on the [FSTs] was understandable considering her injuries,[6] and was did [*sic*] not present many clues to begin with. Further, she requested a blood test, and the only reason one was not taken was because the phlebotomist administering the test failed to find a vein in her arm. Was the verdict as to each of these charges [*sic*] against the weight of the evidence?

Brief for Appellant at 4-5 (emphasis in original).

_____

[5] On May 21, 2021, this Court dismissed Figueroa's appeal for failure to file a brief. Order, 5/21/21, at 1. On the same day, Figueroa filed a Motion to Reconsider Dismissal of Appeal, and asserted that appellate counsel "in good faith did not believe an Order scheduling a filing deadline for appellant's brief had yet been issued." Motion to Reconsider Dismissal of Appeal, 5/21/21, at 1-2 (unnumbered); **see also id.** at 2-3 (unnumbered) (wherein Figueroa's counsel explained the efforts taken to perfect Figueroa's appeal and the breakdown within counsel's law firm resulting in a failure to file an appellate brief). On May 26, 2021, this Court granted Figueroa's Motion, vacated its Order dismissing Figueroa's appeal, and ordered that Figueroa's appellate brief be filed on or before May 28, 2021. Order, 5/26/21. Figueroa filed her brief the following day.

[6] We observe that Figueroa does not allege any injuries as a result of this incident. Rather, as discussed *infra*, Figueroa asserts that she had pre-existing health conditions. **See** Brief for Appellant at 12-18.

In her first claim, Figueroa contends that the Commonwealth presented insufficient evidence of DUI, because the Commonwealth failed to prove beyond a reasonable doubt that she was substantially impaired. *Id.* at 10-12. Figueroa acknowledges that "guilt under [Section] 3802(a)(1) may be proven through the failure of [FSTs]," but Figueroa argues that she had difficulty completing the tests due to her "numerous health problems" including hip and knee issues, as well as gout. *Id.* at 12-13. Additionally, Figueroa argues that, due to these health issues, she has a handicap placard for her vehicle, because she struggles to walk for short distances. *Id.* at 13-14. Figueroa contends that, in light of her health problems, her failure to complete the FSTs cannot constitute sufficient evidence to establish DUI. *Id.*

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for a fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence received must be considered. Finally, the [trier] of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Smith*, 97 A.3d 782, 790 (Pa. Super. 2014) (citation omitted).

The Motor Vehicle Code states, in relevant part, that "[a]n individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle." 75 Pa.C.S.A. § 3802(a)(1).

"Evidence of erratic driving is not a necessary precursor to a finding of guilt under the relevant statute." *Commonwealth v. Mobley*, 14 A.3d 887, 890 (Pa. Super. 2011). Rather, "[t]he Commonwealth may prove that a person is incapable of driving through the failure of a field sobriety test." *Id.* (citation omitted).

In its Opinion, the trial court addressed this claim as follows:

> Th[is C]ourt in *Mobley* stated that the defendant's sufficiency claim had to fail because the defendant in that case failed multiple sobriety tests, smelled of alcohol, and drove through a stop sign despite a police officer [being] in view of the defendant. *Mobley*[, 14 A.3d] at 890. Thus, because the evidence must be viewed in [the] light most favorable to the Commonwealth, the evidence … cannot be "considered so weak and inconclusive that no probability of fact can be drawn from the circumstances." *Id.*
>
> The case at hand is similar. Officer Kling testified that [Figueroa]'s vehicle arrived at the intersection of King and Hartley, which was clearly posted as "no left turn on red[.]" N.T. [(]Non-Jury Trial[)], [10/30/20, at] 6. [O]fficer [Kling] observed the vehicle pull up to the red light on King Street, and then make a left turn onto Hartley Street **while the signal was steady red**…. *Id.* at 6-7. Officer Kling approached the vehicle on the driver['s] side[,] where he made contact with [Figueroa]. [*Id.* at] 7.

- 7 -

[Figueroa] admitted to making a left hand turn on the red light. ***Id.*** Officer Kling testified [that] while speaking with [Figueroa] he observed her words to be slurred, and she avoided looking at him. ***Id.*** at 8.

Officer Kling then noticed [Figueroa]'s eyes were bloodshot and gl[a]ssy[,] and the vehicle smelled of an alcoholic beverage. ***Id.*** [Figueroa] acknowledged consuming three (3) drinks[, two rum and Coke cocktails and one beer,] during the course of the evening[,] with the time conflicting on when her last drink was consumed before operating the vehicle. [Figueroa] first indicated she was done drinking … by 9:15 p.m., but later changed her statement to consuming her last drink an hour before she operated her vehicle. ***Id.*** at 53[,] 64.

…[Figueroa] exhibited multiple clues during the performance of the []FST[s]. [***Id.*** at] 25-27. Based upon [Figueroa]'s performance, Sergeant Irvin[] did not feel comfortable letting [Figueroa] get back in the car.

\* \* \*

[Figueroa] also indicated on direct examination [that] she had bariatric surgery. The court took this into account because this type of surgery recommends that a person not drink alcohol[,] because the body processes alcohol differently after the surgery. The blood draw was unsuccessful, thus[,] this [c]ourt was limited to what the officers observed and on [*sic*] the night in question, the [FSTs], and [Figueroa]'s statements made in court. Based upon the evidence before the court, including the testimony and observations on the video, there was sufficient evidence beyond a reasonable doubt that [Figueroa] was impaired to the point she was incapable of driving safely.

Trial Court Opinion, 3/12/21, at 16-19 (emphasis in original, footnotes omitted).

Our review of the record confirms the trial court's determinations and conclusions. ***See Mobley***, ***supra***; ***see also Smith***, ***supra***. Indeed, in addition to the traffic violations, the Officers testified that Figueroa's vehicle

smelled of alcohol; her eyes were bloodshot and glassy; and she was unable to complete any of the FSTs. *See* N.T. (Non-Jury Trial), 10/30/20, at 5-7, 24-27; *see also Mobley*, 14 A.3d at 890 (stating that sufficient evidence of DUI – general impairment existed where the defendant failed multiple FSTs, smelled of alcohol, and drove through a stop sign). Additionally, as the trial court notes in its Opinion, Figueroa testified that she had consumed three drinks that evening. *See* Trial Court Opinion, 3/12/21, at 18-19; N.T. (Non-Jury Trial), 10/30/20, at 53, 64. Moreover, the Officers testified to Figueroa's erratic driving, which, when considered together with the above facts, demonstrated that Figueroa was not capable of safely operating her vehicle. *See* N.T. (Non-Jury Trial), 10/30/20, at 4-7, 22-25; *see also Commonwealth v. LaBenne*, 21 A.3d 1287, 1290 (Pa. Super. 2011) (concluding that the Commonwealth had presented sufficient evidence of DUI where the defendant, *inter alia*, was seen driving erratically, had bloodshot, glassy eyes, had slow and constricted speech, and failed FSTs). Accordingly, we can grant Figueroa no relief on this claim.

In her second claim, Figueroa contends that the trial court's verdict was against the weight of the evidence. Brief for Appellant at 14. Figueroa argues that, due to her health problems, her failure to complete the FSTs was given improper weight. *Id.* at 14-18. Additionally, Figueroa asserts that, at trial, Sergeant Irvin conceded that Figueroa had performed well "on many of the relevant clues pointing towards intoxication." *Id.* at 16. Figueroa

acknowledges that she swayed during the walk-and-turn test, and only performed eight seconds of the one-leg stand, but contends that these failures are normal for a person who has "back problems, knee problems, is overweight, and has gout in her feet." *Id.* at 18. Further, Figueroa asserts that her health problems are enough to warrant a handicap placard. *Id.*

Figueroa further asserts that the trial court's verdict was against the weight of the evidence, because Figueroa's request of a blood test suggested her consciousness of innocence. *Id.* Additionally, Figueroa argues that she also requested a breath test, but the Officers did not have a breathalyzer. *Id.* at 18-19. Figueroa asserts that it was not her fault, but the Commonwealth's, that the Commonwealth failed to obtain a blood or breath test. *Id.* at 19.

Our standard of review related to a challenge to the verdict as against the weight of the evidence is well settled.

> The weight of the evidence is exclusively for the finder of fact[,] who is free to believe all, part, or none of the evidence and to determine the credibility of witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the … verdict if it is so contrary to the evidence as to shock one's sense of justice.

*Commonwealth v. Small*, 741 A.2d 666, 672-73 (Pa. 1999). Additionally, where the trial court has ruled on the weight claim, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence; rather, our appellate review is limited to whether the trial court abused its discretion in ruling on the weight claim. *Commonwealth v. Champney*, 832 A.2d 403, 408 (Pa. 2003).

In its Opinion, the trial court addressed Figueroa's weight claim as follows:

> In denying [Figueroa]'s post-sentence [M]otion, this [c]ourt's sense of justice was not shocked.
>
> The court's determination of guilt was not against the weight of the evidence, and [Figueroa] is not entitled to a new trial. The court, as the trier of fact in a bench trial, was []free to believe all, part, or none of the evidence and to determine the credibility of the witnesses.[] Notably, this [c]ourt chose to believe the testimony of Officer Kling and Sergeant Irvin[], the results of []FST[s] and [Figueroa]'s conduct shown in the MVR recording, which called into question [Figueroa]'s innocence as well as [Figueroa]'s testimony….
>
> In conclusion, the determination of guilt found by this [c]ourt was properly based upon the evidence that [Figueroa] was impaired to the extent that she was incapable of driving safely[, and] thus[,] does not shock this [c]ourt's sense of justice, such as to warrant the granting of a new trial.

Trial Court Opinion, 3/12/21, at 22-23 (citations omitted).

Our review of the record confirms that the trial court did not abuse its discretion when it concluded that the verdict was not against the weight of the evidence. **See Champney**, **supra**. Moreover, this Court will not reweigh evidence. **See id.**; **see also Commonwealth v. Koch**, 39 A.3d 996, 1001 (Pa. Super. 2011) (reiterating that it is not the position of this Court to "reweigh the evidence or substitute our own judgment for that of the fact finder"). Discerning no abuse of discretion, this claim fails.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>11/5/2021</u>